# EXHIBIT A

REDACTED BY COUNSEL    1

## JAMS SETTLEMENT AGREEMENT
## TERM SHEET

In Re: Deborah Politis (herein "Politis") and GlaxoSmithKline, its parent, subsidiaries and affiliated corporations and entities (herein "GSK"), collectively referenced herein as "Parties."

The Parties agree to settle in full the disputes between them in accordance with the terms listed below:

1) PAYMENT

   A) GSK will pay to Politis in full and final settlement of all claims she may have to date, including claims detailed in 1:10-cv-11773-GAO (U.S. D.C. MA), the gross amount of $_____  GSK's payment will be made within _30_ days of delivery to GSK's attorney of Politis's signed Release and Stipulation of Dismissal, described below.

   B) GSK's payment will be in at least two separate checks: the first check will be payable to Politis and her Attorney Jeffrey Mazer for attorneys fees and costs (the exact amount to be specified by Politis) and reported on Form 1099 to Politis and Attorney Mazer; and a second check payable to Politis for the balance of the settlement proceeds. GSK will make the second check payable to Politis for emotional distress and other non-economic damages, which will be reported on Form 1099, unless at Politis's direction Politis chooses to have the second check divided into two payments: one for the above-referenced emotional distress and other non-economic damages, and a separate payment for alleged lost compensation, reportable on Form W-2 (and subject to all applicable tax withholding). Politis will advise



**REDACTED BY COUNSEL**

2

GSK of her selection on or before June 25, 2012. The gross total amount of all payments will equal $        .

    i.   Politis is responsible for all taxes due on the settlement proceeds; and

    ii.  All payments to Politis will be sent in care of her attorney at the Mazer Law Group, LLC.

2) RELEASE

Politis will fully release GSK, its present and former officers, directors, employees, attorneys, affiliates, successors, and insurers of all claims she may have to date; and will stipulate to the dismissal with prejudice of all litigation, including U.S.District Court (MA) 1:10-cv-11773, and will affirm that she has no other claims, administrative complaints, etc. against GSK.

3) The Stipulation of Dismissal with Prejudice, referenced above, will not be filed with the Court until after GSK has delivered the payment proceeds described in paragraph 1 above.

4) GSK agrees that any request for a reference concerning Politis will be answered only by confirmation of the dates of her employment and her last job title.

5) Politis agrees that she will neither seek nor accept future employment with GSK, or its parent, subsidiaries or affiliated corporations and entities.

6) Politis will not disparage GSK its present and former officers, directors, employees, attorneys, affiliates, or successors.

7) Politis agrees to keep the terms and fact of this Settlement confidential. Politis may disclose the Settlement terms to her spouse, her attorney(s), and financial advisor(s), but she must direct them not to disclose the

terms or fact of the Settlement, or as may otherwise be required pursuant to lawful process, a Court Order, or at the direction of a governmental agency. GSK may disclose the terms and fact of settlement as business necessitates. Any Party may disclose that "the matter has been resolved."

8) This is a Settlement of a disputed matter and no Party admits liability.

9) Counsel will cooperate to prepare a more detailed description of this Settlement Agreement, Release, and Stipulation of Dismissal with Prejudice for execution by the parties within ten (10) business days from today.

AGREED in Boston, MA this 19th day of June 2012

FOR: DEBORAH POLITIS

BY: _____

DATE: June 19, 2012

FOR: DEBORAH POLITIS

BY: _____

DATE: 6/19/12

FOR: GSK

BY: _____

DATE: June 19, 2012

# EXHIBIT B

## MAZER LAW GROUP, LLC
5 Broadway
Building 1, Suite 101
Saugus, MA 01906

TELEPHONE: (781) 596-8604  
FACSIMILE: (781) 599-8980  
E-MAIL: info@mazerlaw.com

Jeffrey R. Mazer, Esquire  
Timothy S. Bolen, Esquire  
*Deirdre M. Clegg, Esquire  
*Elena M. Rosnov, Esquire

*(Of Counsel)

August 20, 2012

**VIA EMAIL & FIRST CLASS MAIL**

Michael A. Fitzhugh, Esq.
Fitzhugh & Mariani, LLP.
155 Federal Street, Suite 1700
Boston, MA 02110-1727

RE: <u>Politis v. GlaxoSmithKline</u>
    <u>No. 10-11773-GAO</u>

Dear Attorney Fitzhugh:

    I am writing to let you know that my client, Debbie Politis, will not be signing the detailed settlement agreement. As such, I would suggest that we draft a Joint Motion to enlarge the discovery period and other deadlines in the Scheduling Order as fact discovery was to be completed by August 20, 2012.

    I am out of the office on vacation until August 27, 2012, however, I would suggest that we file our Joint Motion on or before August 31, 2012 so that the Court has ample time to review our Motion prior to the status conference scheduled for September 10, 2012.

    Should you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

*/s/ Jeffrey R. Mazer*

Jeffrey R. Mazer

JRM/lr
cc: Ms. Deborah Politis

# EXHIBIT C

**FITZHUGH & MARIANI LLP**
**ATTORNEYS AT LAW**

155 FEDERAL STREET
SUITE 1700
BOSTON, MA 02110-1727
TELEPHONE: (617) 695-2330
FAX: (617) 695-2335

WWW.FITZHUGHLAW.COM

MICHAEL A. FITZHUGH
AMY CASHORE MARIANI ᐞ

JESSICA L. BASSO * ▼
KATHLEEN GROVER * ᐞ
JEFFREY A. NOVINS ◊

EDWARD P. O'LEARY †
JOSEPH J. RANONE * ▲
JAMES B. ROCHE* ±
THOMAS R. RICCI * ▼
TIMOTHY J. ROBENHYMER *
SONIA L. SKINNER ■
DAVID JON VOLKIN

RHODE ISLAND OFFICE

303 JEFFERSON BLVD.
WARWICK, RI 02888
TELEPHONE (401) 739-2330
FAX (401)921-4805

CONNECTICUT OFFICE

100 CONSTITUTION PLAZA
SUITE 600
HARTFORD, CT 06103
TELEPHONE: (860) 549-6803
FAX: (860) 728-0546

* OF COUNSEL

UNLESS DESIGNATED OTHERWISE, OUR ATTORNEYS ARE ADMITTED ONLY IN MASSACHUSETTS

▲ ALSO ADMITTED IN RHODE ISLAND
ᐞ ONLY ADMITTED IN CONNECTICUT
◊ ALSO ADMITTED IN NEW YORK
⌂ ALSO ADMITTED IN MAINE

▼ ONLY ADMITTED IN RHODE ISLAND
■ ALSO ADMITTED IN MARYLAND
† ALSO ADMITTED IN NEW HAMPSHIRE
± ONLY ADMITTED IN MAINE AND FLORIDA

November 16, 2012

Jeffrey R. Mazer, Esq.
**Mazer Law Group, LLC**
5 Broadway
Building 1, Suite 101
Saugus, MA 01906

Re:   Deborah Politis v. GlaxoSmithKline;
      USDC of Massachusetts Civil Action No. 1:10-cv-117723-GAO.

Dear Mr. Mazer:

The instant letter will further address yours of Monday August 20th, and should be considered in light of mine to you dated August 22nd, as well as our ensuing telephone conversations, the most recent of which was this past Friday. In my prior letter and during every one of our telephone conversations, I have repeatedly requested that you articulate Ms. Politis' rationale and factual basis for unilaterally rejecting and refusing to execute, a settlement agreement that you and I have both acknowledged and understood finalized the agreement reached after a very long and arduous mediation session on June 19th. Yours of August 20th astonished me, because without warning it blithely suggested that we file a joint motion to extend this case's discovery deadline; however, at no time since then have you articulated a supportable basis for Ms. Politis' refusal to move forward with a final exchange of releases and the agreed-upon settlement amount.

In fact, the document trail establishes that for the ensuing two months after the mediation, not once during this time did you suggest that there was some basis to void the settlement. For example, on June 22nd you sent me an email about Ms. Politis needing more time to discuss

**FITZHUGH & MARIANI LLP**   Jeffrey R. Mazer, Esq.   11/16/2012   (2)

allocation of the settlement with her financial advisor.[1] I assented to this request. Thereafter, you communicated to me that you were endeavoring to provide a W-9 from your client and that this was causing a delay. The salient point is that at no time during a 60 day period following the mediation did you even so much as indicate that your client would seek to revoke or void the settlement, until I was "blindsided" by your August 20th letter.

It bears noting that at no time prior to your August 20th letter did you assert, or even allude to the possibility, that Ms. Politis may have been incapable of entering into this agreement because we were all up so late for our "marathon" session on June 19th. I mention this merely by way of example, but in any event, Massachusetts courts have expressly held that even if this excuse were asserted, it would be of no help to Ms. Politis. *See, e.g., Grindlinger v. Grindlinger*, 10 Mass.App.Ct. 823, 823 (1980) ("fatigue and anxiety" not sufficient to invalidate separation agreement).

As you well know, because we have discussed this issue, Massachusetts law is quite clear in favoring the enforcement of settlements. Furthermore, you and I have also discussed the most recent case on the subject, *Sparrow v. Demonico*, 461 Mass. 322 (2012), wherein the SJC was asked to consider whether a party could void a settlement agreement based upon her lack of capacity to execute it. The case involved a contested issue of property ownership between two sisters, and was settled at a mediation where both were represented by counsel. Later, one of them (Susan) sought to void the settlement by claiming that she was incapacitated; the clarity of the SJC's ruling has particular significance here, if indeed that is the basis of Ms. Politis' desire to void the settlement we reached in June:

> The evidence did not support a conclusion that, under the traditional test for incapacity, Susan was incapable of understanding the nature and quality of the transaction, or of grasping its significance. Indeed, based on Susan's testimony, she understood at the time that she was participating in a mediation to discuss settlement of the lawsuit; she was aware that the subject of the mediation was to resolve the dispute regarding the family home in Woburn; she participated in the mediation and listened to the arguments of counsel; and she "couldn't believe how things [were] turning out."
>
> It is apparent from Susan's testimony that, even if she suffered from a transient mental defect, or "breakdown" as the judge concluded, she had at least some understanding of the nature of the transaction and was aware of its consequences. Under the modern

---

[1] "Michael: I am writing to let you know that Ms. Politis has attempted to confer with her financial advisor and has learned that he is on vacation this week. As such, she will not be able to meet with him until next week. Accordingly, Ms. Politis requests the courtesy of an extension until Wednesday, June 27, 2012 to indicate the allocation of the settlement. Thank you and have a great weekend."

**FITZHUGH & MARIANI LLP**  Jeffrey R. Mazer, Esq.  11/16/2012    (3)

> test to establish Susan's incapacity, the evidence was similarly insufficient. There was no evidence that the settlement agreement was unreasonable, or that a reasonably competent person would not have entered into it.

*Sparrow v. Demonico*, 461 Mass. at 332.

    This statement of the law is clear, unequivocal and directly apposite to Ms. Politis' baseless and insupportable refusal to execute the releases and consummate the settlement we reached. For reasons that neither I nor anyone else involved in this matter can divine, she's had a change of heart or something akin to "buyer's remorse," but whatever is driving her to renege on the settlement is not going to be countenanced by GSK - nor will it find any refuge in the governing legal principles.

    GSK incurred $3,798.69 in expenses for its portion of the mediation fee, and since that time, has incurred legal expenses by the undersigned as well as Attorney Shad, who is my supervising counsel. Should your client continue to insist upon spuriously attempting to breach this agreement, GSK will bring this expenditure of funds to the court's attention as evidence of how it has been harmed by Ms. Politis' cavalier attitude toward the process and her arbitrarily trying to renege on the agreement reached between the parties. It will seek not only to enforce the agreement, but it will also submit a motion to have the court deduct from the settlement amount all expenses and legal fees that it has been forced to incur in its enforcement efforts; this will include but not be limited to the costs of all communications on this subject between you and me, reports to my client and Attorney Shad, communications with Ms. Walsh and also my having to prepare for and attend a Status Conference now scheduled for December 17th - which is a proceeding that simply should not be on my "event horizon."

    If your client continues to act in such an arbitrary and capricious manner and I don't get confirmation from you on or before November 22nd that she will indeed live up to her obligations and move forward to finalize the settlement, I will begin preparation of the motion described above, and GSK will not thereafter reverse its decision to seek monetary sanctions that it will insist on deducting from the settlement proceeds. Given the nature of this situation, all subsequent communications between us should be in writing.

                                                              Very truly yours,

                                                             Michael A. Fitzhugh

# MAZER LAW GROUP, LLC

**EXHIBIT D**

5 Broadway
Building 1, Suite 101
Saugus, MA 01906

TELEPHONE: (781) 596-8604  
FACSIMILE: (781) 599-8980  
E-MAIL: info@mazerlaw.com

Jeffrey R. Mazer, Esquire  
Timothy S. Bolen, Esquire  
*Deirdre M. Clegg, Esquire  
*Elena M. Rosnov, Esquire

*(Of Counsel)

December 12, 2012

Michael A. Fitzhugh, Esq.
Fitzhugh & Mariani, LLP.
155 Federal Street, Suite 1700
Boston, MA 02110-1727

RE: <u>Politis v. GlaxoSmithKline</u>
    <u>No. 10-11773-GAO</u>

Dear Attorney Fitzhugh:

I am writing in response to your November 16, 2012 letter. As you are aware, Ms. Politis' position is that the Term Sheet entered into on June 19, 2012 is **not** a binding agreement. Accordingly, Ms. Politis has no obligation to sign the Confidential General Release and Settlement Agreement. Unfortunately this is simply a case that will have to be determined through litigation.

### Term Sheet

Paragraph 2 of the Term Sheet states:

> Politis **will** fully release GSK, its present and former officers, directors, employees, attorneys, affiliates, successors, and insurers of all claims she may have to date; and **will** stipulate to the dismissal with prejudice of all litigation, including U.S. District Court (MA) 1:10-cv-11773, and **will** affirm that she has no other claims, administrative complaints, etc. against GSK.

As an initial matter, the term sheet does not release Ms. Politis' claims. The term sheet indicates that Ms. Politis **will** fully release GSK, implying that Ms. Politis will do so in the future. In further support of this contention, paragraph 9 the Term Sheet demonstrates that

Counsel would be preparing a detailed substantive Settlement Agreement and General Release to be executed in the future.

Moreover, this release on its face is invalid. The Older Workers Benefits Protection Act, 29 U.S.C.S. § 626, mandates that a waiver of Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., rights or claims may not be considered knowing and voluntary unless at a minimum various specific conditions are met. 29 U.S.C.S. § 626(f)(1). The term sheet contains none of this required language and thus is invalid. See Commonwealth v. Bull HN Info. Sys., 143 F. Supp. 2d 134 (D. Mass 2001)(determining releases which did not contain the required language pursuant to 29 U.S.C.S. Section 626(f)(1) to be invalid).

While Defendants may try to argue that Ms. Politis' claim was not a claim pursuant to the ADEA, but rather is claim pursuant to the ADA, and an invalid ADEA waiver does not impact non ADEA claims, this argument would be unavailing. In fact, this very issue was addressed in Bull. In Bull, the employer filed a Motion for Summary Judgment in attempt to enforce the release of an ADA claim where the ADEA waiver in the release was found to be invalid. The Court determined that as a matter of law it could not be determined whether the ADA claims were waived by the release. The Court noted that to be enforceable, "ADA waivers and releases must be knowing and voluntary, as evidenced by the totality of the circumstances." The Court further noted that various factors are relevant to this inquiry, including the amount of time a plaintiff was given to study the waiver agreement. In this case, with respect to the term sheet, Ms. Politis was required to sign the document the evening of the mediation at approximately midnight following a fourteen (14) hour mediation.

Therefore, it is Ms. Politis' position that any waiver of claim based upon the term sheet is invalid.

### Confidential General Release and Settlement Agreement

The language in the Confidential General Release and Settlement Agreement ("Settlement Agreement") further supports Ms. Politis' contention that there was no binding agreement. The Settlement Agreement contains the language required pursuant to 29 U.S.C.S. § 626, namely language providing the Plaintiff with a minimum of twenty-one (21) days to consider the Agreement, advising the Plaintiff to seek counsel to review the agreement, and providing the Plaintiff with a seven (7) day revocation period. By virtue of the inclusion of this language, it is illogical to conclude that Ms. Politis is bound by the terms of the Term Sheet. The Settlement Agreement provided Ms. Politis with 21 days to consider the agreement and a revocation period in which to revoke the agreement after execution. Thus, it is implicit that Ms. Politis had the option of rejecting the terms of the settlement by deciding not to sign the agreement or by revoking the Settlement Agreement prior to the expiration of the revocation period. It is illogical to contend that the Plaintiff is afforded an opportunity to consider and

revoke an agreement, but yet would be bound by a term sheet if the Settlement Agreement was not signed or revoked. As such, Ms. Politis has no obligation to sign the Settlement Agreement.

Should you wish to discuss this matter further, please do not hesitate to contact me.

Very truly yours,

Jeffrey R. Mazer

cc: Ms. Deborah Politis