UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DEBORAH POLITIS,

    Plaintiff,

v.

GLAXOSMITHKLINE,

    Defendant.

Civil Action No. C.A. 1:10-cv-11773-GAO

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

NOW COMES, the Plaintiff, Deborah Politis, who hereby opposes the Defendant's Motion to enforce the Settlement Agreement. The Plaintiff has demonstrated that there was no meeting of the minds when the term sheet preceding the Settlement Agreement was signed. Even assuming, *arguendo*, that there was a meeting of the minds, the release contained in the term sheet is unenforceable as it does not comply with the language contained in the Older Worker's Benefit Protection Act.

## FACTS

On or about October 18, 2010, the Plaintiff, Deborah Politis ("Ms. Politis"), filed a one (1) count Complaint against her former employer, GlaxoSmithKline ("GSK"), asserting handicap discrimination in violation of G.L. c. 151B, § 4(16) and the Americans with Disabilities Act (the "ADA").

In or about May, 2012, the parties agreed to attend mediation to explore potential resolution of Ms. Politis' claims against GSK. Prior to attending mediation, Ms. Politis was

concerned that due to her mental impairment she had difficulty making decisions "on the spot." *See Affidavit of Deborah Politis, letter from Edmund C. Neuhaus, PhD., ABPP and letter from Charles Lindley, M.D.* Ms. Politis contemplated bringing a close friend or family member to the mediation to assist her in making a decision at mediation, but choice not to as she did not intent to bind herself to an agreement during the mediation session. *See Affidavit of Deborah Politis, letter from Dr. Neuhaus and letter from Charles Lindley, M.D.*

On June 19, 2012, the parties attended private mediation at JAMS Endispute. After approximately fourteen (14) hours of settlement negotiations, the parties reached a tentative settlement and entered into a so-called "Term Sheet." In signing the Term Sheet, Ms. Politis did not believe that she was binding herself to an agreement as she made provisions to provide her with ample time to discuss the implications of any settlement with her disability attorney.[1] *See Affidavit of Deborah Politis.* Ms. Politis further understood that she was not bound to the Term Sheet as a subsequent detailed settlement agreement would be forthcoming which would provide her with a minimum of twenty-one (21) days to consider the agreement and which would provide her with a seven (7) day revocation period after signing the subsequent detailed settlement agreement.[2]

More specifically, the Term Sheet provides in relevant part, Paragraph 2, "Politis will fully release GSK, its present and former officers, directors, employees, attorneys, affiliates, successors, and insurers of all claims she may have to date; and will stipulate to the dismissal with prejudice of all litigation, including U.S. District Court (MA) 1:10-cv-

---

[1] Paragraph 1(B) demonstrates that Ms. Politis would be consulting with her disability attorney and financial advisor responding by June 25, 2012 relative to the impact the settlement would have on her disability benefits.

[2] As further evidence that Ms. Politis did not understand that she was binding herself to the terms and conditions of the Term Sheet, Dr. Neuhaus states in his letter that after learning that she may be bound by the term sheet, Ms. Politis treated with him on several occasions in June, July and August, 2012 presenting herself as distraught, upset and suffering extreme anxiety and hopelessness at the thought of being bound by the terms of the Term Sheet. See Letter from Dr. Neuhaus attached hereto.

2

11773, and will affirm that she has no other claims, administrative complaints, etc. against GSK." The Redacted Term Sheet is attached hereto. Similarly, Paragraph 9 states, "Counsel would be preparing a detailed substantive Settlement Agreement and General Release to be executed in the future." The Term Sheet contained none of the language required by the Older Workers Benefit Protection Act ("OWBPA"). Similarly, the Term Sheet contains no language indicating any intent to be bound by its terms.

In contrast to the Term Sheet, the Confidential General Release and Settlement Agreement (the "Settlement Agreement") contained the language required by the OWBPA. More specifically, the Settlement Agreement contains the language required pursuant to 29 U.S.C. § 626, namely language providing the Plaintiff with a minimum of twenty-one (21) days to consider the Agreement, advising the Plaintiff to seek counsel to review the agreement, and providing the Plaintiff with a seven (7) day revocation period. The redacted Settlement Agreement is attached hereto.

Moreover, Paragraph 22 of the Settlement Agreement states that the parties agree to be bound by the Agreement by the signing said Agreement. Paragraph 27 of the Settlement Agreement provides that that in the event "Plaintiff does not accept this Agreement as set forth above, or in the event Plaintiff revokes this Agreement during the seven-day revocation period, this Agreement, including but not limited to the obligation of Defendant to provide payments as discussed above, shall be deemed null and void."

Pursuant to the terms of the Settlement Agreement and 29 U.S.C. § 626, by letter dated August 20, 2012, Plaintiff informed Defendant that she would not be signing the Settlement Agreement and General Release. The August 20, 2012, letter is attached hereto. On December 14, 2012, the Defendants filed a Status Report requesting that the Plaintiff show cause why the Settlement Agreement is not binding. On December 17, 2012, the parties appeared at a Status

Conference where this Court decided to treat Defendants' Status Report as a Motion to Enforce the Settlement Agreement. The Plaintiff, hereby opposes that Motion.

## I. The June 19, 2012 Term Sheet is Not Enforceable

The June 19, 2012, Term Sheet is not enforceable. There was no meeting of the minds as Ms. Politis did not then have a present intent to be bound by the terms of the Term Sheet. Therefore, the June 19, 2012 Term Sheet is not enforceable.

"It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." Situation Mgmt. Sys., Inc. v. Malouf, 430 Mass. 875, 878 (2000); see McCarthy v. Tobin, 42 Mass. 84 (1999). Courts determine the question of present intention to be bound based on mutual objective manifestations of intent, not based on unilateral after-the-fact assertions as to subjective state of mind. See T.F. v. B.L., 442 Mass. 522 (2004) ("The defendant's subjective intent is irrelevant when she knows or has reason to know that her objective actions manifest the existence of an agreement"); Brewster Wallcovering Company v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582 (2007) (binding contract arises when "the parties manifested the intent, viewed objectively, to be bound at the time of contract formation, notwithstanding either party's subjective intent"); Community Builders, Inc. v. Indian Motorcycle Associates, Inc., 44 Mass. App. Ct. 537 (1998) (question of parties' intention is one of law for the court, to be decided based on language of agreements).

Among the objective manifestations to be considered is the extent to which the agreement is complete, addressing all aspects of the matter in dispute, or leaves some issues for further negotiation. For an agreement to be binding, "[i]t is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily

4

preclude the formation of a binding contract...The parties must, however, have progressed beyond the stage of "imperfect negotiation."" Situation Mgmt., 430 Mass. at 878 citing Lafayette Place Assocs. v. Boston Redevelopment Auth., 427 Mass. 509 (1998) and Rosenfield v. United States Trust Co., 290 Mass. 210 (1935).

While it is true that the parties' intention to execute a final written agreement "justifies a strong inference that the parties do not intend to be bound" until the agreement is executed, it is also true that "if all the material terms...have been agreed upon, it may be inferred that the writing to be drafted and delivered is a mere memorial of the contract.'" Situation Mgmt., 430 Mass. at 879-880 quoting Rosenfield, 290 Mass. at 216. Where "the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract.'" McCarthy v. Tobin, 429 Mass. at 87 quoting Goren v. Royal Invs., Inc., 25 Mass. App. Ct. 137 (1987). This is particularly so where "norms exist" for the "customary resolution" of the issues left outstanding, or the parties "specify formulae and procedures that, although contingent on future events, provide mechanisms to narrow present uncertainties." McCarthy, *supra*, 429 Mass. at 87 quoting Goren, *supra*, 25 Mass. App. Ct. at 141 and Lafayette Place, 427 Mass at 518.

In the case at bar, the objective manifestations demonstrate there was no intent for Ms. Politis to be bound by the terms of the Term Sheet. The parties did not progress beyond the stage of "imperfect negotiation" as there were issues that were left open. More specifically, Ms. Politis was provided until June 25, 2012, to consult with her financial advisor and disability attorney to learn the impact any settlement would have on her disability benefits. Moreover, norms exist in the field of employment law that the Plaintiff would have a minimum of twenty-one (21) days to consider whether or not to sign the subsequent Settlement Agreement. In

addition, even after signing the subsequent Settlement Agreement the Plaintiff would be provided with a (7) seven day period to revoke the agreement. The impact of the Plaintiff not signing the subsequent Settlement Agreement or revoking said signature within the applicable time period has the effect of rendering any prior agreements null and void. Therefore, the Plaintiff's signature and non-revocation are conditions precedent to a binding agreement.

"A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract...If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced." Mass. Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39 (1991); see Twin Fires Inv., LLC. v. Morgan Stanley Dean Witter & Co., 445 Mass. 411 (2005). Whether a contingency is a condition precedent is a matter of contract interpretation, to be determined based on "the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances." Mass. Mun. Wholesale Elec., 411 Mass. at 45-46.

The language of the Agreement clearly demonstrates that the need for Ms. Politis to sign the substantive Settlement Agreement and thereafter not revoke the Settlement Agreement within the allotted time are conditions precedent. The substantive Settlement Agreement clearly states in Paragraph 27 that in the event "Plaintiff does not accept this Agreement as set forth above, or in the event Plaintiff revokes this Agreement during the seven-day revocation period, this Agreement, including but not limited to the obligation of Defendant to provide payments as discussed above, shall be deemed null and void."

In the alternative, the Plaintiff states that if this Court does not find that signing the substantive Settlement Agreement and not revoking said acceptance are conditions precedent, then the Court must find that those factors are conditions subsequent and thus void the Term

Sheet, making it non-binding. "A condition subsequent is a condition which relieves a party of the obligation of further performance under a valid contract." City of Haverhill v. George Brox, Inc., 47 Mass. App. Ct. 717 (1999). If a condition subsequent is fulfilled, "the agreement of the parties, rather than then coming into existence, will simply continue to be binding." Hunneman Real Estate Corp. v. Norwood Realty, Inc., 54 Mass. App. Ct. 416 (2002) citing Nigro v. Conti, 319 Mass. 480 (1946); City of Haverhill, 47 Mass. App. Ct. at 719-720. If it is not fulfilled, obligations under it are discharged.

In fact, by virtue of the inclusion of the language pursuant to the OWBPA, it is illogical to conclude that Ms. Politis is bound by the terms of the Term Sheet. The substantive Settlement Agreement provided Ms. Politis with twenty-one (21) days to consider the agreement and a revocation period in which to revoke the agreement after execution. Thus, it is implicit that Ms. Politis had the option of rejecting the terms of the settlement by deciding not to sign the agreement or by revoking the Settlement Agreement prior to the expiration of the revocation period. It is illogical to contend that the Plaintiff is afforded an opportunity to consider and revoke an agreement, but yet would be bound by a term sheet if the Settlement Agreement was not signed or revoked. Therefore, there was no meeting of the minds and the term sheet is not binding.

## II. If This Court Determines that the Term Sheet is Binding, It Must be Voided As Non-Compliant with the Older Workers' Benefit Protection Act.

Even if this Court determines, *arguendo*, that the Term Sheet is binding, the Term Sheet must still be voided as it is non-compliant with the Older Workers Benefit Protection Act. The release contained within the Term Sheet is invalid on its face. The Older Workers Benefits Protection Act, 29 U.S.C. § 626, mandates that a waiver Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, rights or claims may not be considered

knowing and voluntary unless, at a minimum, various specific conditions are met. 29 U.S.C. § 626(0)(1). The Term Sheet contains none of this required language and thus is invalid. See Commonwealth v. Bull MN Info. Sys., 143 F.Supp. 2d 134 (D. Mass 2001) (determining releases which did not contain the required language pursuant to 29 U.S.C. § 626(f)(1) to be invalid).

While the Defendant may try to argue that Ms. Politis' claim was not a claim pursuant to the ADEA, but rather is claim pursuant to the ADA, and an invalid ADEA waiver does not impact non-ADEA claims, this argument is unavailing. In fact, this very issue was addressed in Bull. There, the employer filed a motion for summary judgment in attempt to enforce the release of an ADA claim where the ADEA waiver in the release was found to be invalid. The Court determined that, as a matter of law, it could not be determined whether the ADA claims were waived by the release. The Court noted that to be enforceable, "ADA waivers and releases must be knowing and voluntary, as evidenced by the totality of the circumstances." The Court further noted that various factors are relevant to this inquiry, including the amount of time a plaintiff was given to study the waiver agreement. In this case, with respect to the term sheet, Ms. Politis was required to sign the document the evening of the mediation at approximately midnight following a fourteen (14) hour mediation. Therefore, the Term Sheet must be rendered invalid.

WHEREFORE, for the foregoing reasons, the Plaintiff, Deborah Politis, respectfully requests that the Defendant's Motion to Enforce the Settlement Agreement be denied and that a Scheduling Conference be scheduled to establish new deadlines for the litigation of this matter.

                         Respectfully submitted,

                         **DEBORAH POLITIS**,
                         By her Attorney,

                         /s/ Jeffrey R. Mazer_____
                         Jeffrey R. Mazer (BBO# 647110)
                         **Mazer Law Group, LLC**
                         5 Broadway, Suite 101
                         Saugus, MA 01906
                         Telephone: (781) 596-8604
                         Fax: (781) 599-8980
                         info@mazerlaw.com

Dated: January 14, 2013

## CERTIFICATE OF SERVICE

       I hereby certify that a true and accurate copy of the foregoing Plaintiff's Automatic Disclosures was filed through the ECF system on January 14, 2013 and will be sent electronically to the registered participants below as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Michael A. Fitzhugh
mfitzhugh@fitzhughlaw.com
Fitzhugh & Mariani, LLP.
155 Federal Street, Suite 1700
Boston, MA 02110-1727

                         /s/ Jeffrey R. Mazer_____
                         Jeffrey R. Mazer