> # JAMS SETTLEMENT AGREEMENT
> # TERM SHEET

In Re:  Deborah Politis (herein "Politis") and GlaxoSmithKline, its parent, subsidiaries and affiliated corporations and entities (herein "GSK"), collectively referenced herein as "Parties."

The Parties agree to settle in full the disputes between them in accordance with the terms listed below:

1)  PAYMENT

    A)  GSK will pay to Politis in full and final settlement of all claims she may have to date, including claims detailed in 1:10-cv-11773-GAO (U.S. D.C. MA), the gross amount of ██████████ GSK's payment will be made within _30_ days of delivery to GSK's attorney of Politis's signed Release and Stipulation of Dismissal, described below.

    B) GSK's payment will be in at least two separate checks: the first check will be payable to Politis and her Attorney Jeffrey Mazer for attorneys fees and costs (the exact amount to be specified by Politis) and reported on Form 1099 to Politis and Attorney Mazer; and a second check payable to Politis for the balance of the settlement proceeds. GSK will make the second check payable to Politis for emotional distress and other non-economic damages, which will be reported on Form 1099, unless at Politis's direction Politis chooses to have the second check divided into two payments: one for the above-referenced emotional distress and other non-economic damages, and a separate payment for alleged lost compensation, reportable on Form w-2 (and subject to all applicable tax withholding).  Politis will advise



GSK of her selection on or before June 25, 2012.  The gross total amount of all payments will equal ███████

    i.   Politis is responsible for all taxes due on the settlement proceeds; and

    ii.  All payments to Politis will be sent in care of her attorney at the Mazer Law Group, LLC.

2)    **RELEASE**

Politis will fully release  GSK, its  present and former officers, directors, employees, attorneys, affiliates, successors, and insurers of all claims she may have to date; and will stipulate to the dismissal with prejudice of all litigation, including  U.S.District Court (MA) 1:10-cv-11773, and will affirm that she has no other claims, administrative complaints, etc. against  GSK.

3)    The Stipulation of Dismissal with Prejudice, referenced above, will not be filed with the Court until after GSK has delivered the payment proceeds described in paragraph 1 above.

4)    GSK agrees that any request for a reference concerning Politis will be answered only by confirmation of the dates of her employment and her last job title.

5)    Politis agrees that she will neither seek nor accept future employment with GSK, or its parent, subsidiaries or affiliated corporations and entities.

6)    Politis will not disparage GSK its present and former officers, directors, employees, attorneys, affiliates, or successors.

7)    Politis agrees to keep the terms and fact of this Settlement confidential. Politis may disclose the Settlement terms to her spouse, her attorney(s), and financial advisor(s), but she must direct them not to disclose the

terms or fact of the Settlement, or as may otherwise be required pursuant to lawful process, a Court Order, or at the direction of a governmental agency.   GSK may disclose the terms and fact of settlement as business necessitates.  Any Party may disclose that "the matter has been resolved."

8)  This is a Settlement of a disputed matter and no Party admits liability.

9)  Counsel will cooperate to prepare a more detailed description of this Settlement Agreement, Release, and Stipulation of Dismissal with Prejudice for execution by the parties within ten (10) business days from today.

AGREED in Boston, MA this 19th day of  June 2012

FOR:  _DEBORAH  POLITIS_

BY:  _____

DATE:  _6/19/2012_

FOR:  _DEBORAH POLITIS_

BY:  _____

DATE:  _6/9/12_

FOR:  _GSK_

BY:  _____

DATE:  _June 19, 2012_

## CONFIDENTIAL GENERAL RELEASE AND SETTLEMENT AGREEMENT

**THIS CONFIDENTIAL GENERAL RELEASE AND SETTLEMENT AGREEMENT** is made as of this _____ day of July, 2012, by and between Plaintiff, Deborah Politis, a/k/a Deborah Fishman (hereinafter, referred to as the "**Plaintiff**"), and Defendant GlaxoSmithKline LLC f/d/b/a SmithKline Beecham Corporation (hereinafter "**Defendant**"),

**WHEREAS**, Plaintiff filed a lawsuit in the United States District Court for the District of Massachusetts, *Politis v. GlaxoSmithKline LLC*, Civil Action No. 10-11773-GAO (hereinafter, referred to as the "Lawsuit");

**WHEREAS**, Defendant denies any liability in this matter; and

**WHEREAS**, Plaintiff and Defendant desire to settle this matter between them fully, finally, confidentially and amicably, without any admission of wrongdoing on the part of either party and without further litigation.

**NOW THEREFORE**, in consideration of the promises, covenants, payments, undertakings, obligations, and commitments set forth below, Plaintiff and Defendant, (hereinafter collectively referred to as the "settling parties") hereby agree as follows in full and final settlement of the referenced matters and all related matters:

1. The settling parties enter into this Confidential General Release and Settlement Agreement ("Agreement") in order to resolve this matter and release and discharge forever all actions, claims, causes of action, demands, costs and expenses for damages that Plaintiff may have against Defendant, whether known or unknown, without resort to further litigation. Defendant denies any wrongdoing whatsoever respecting Plaintiff and Defendant's agreement to this settlement is not, and shall not be construed as, an admission of any wrongdoing or liability whatsoever on the part of Defendant, its officers, agents or employees. This Agreement is intended to cover all possible legal and/or equitable relief arising out of the subject matter of the Lawsuit and Plaintiff's employment with Defendant or any of the Releasees, as defined below.

2. In consideration for her execution of this Agreement, no later than thirty (30) days after the later of the following events: (a) the Effective Date of this Agreement, if not revoked in accordance with Paragraph 26 of this Agreement; (b) Defendant's receipt of the executed "Stipulation of Dismissal with Prejudice," as discussed in Paragraph 11; (c) Defendant's receipt of an IRS Form W-9 executed by Plaintiff; or (d) an IRS Form W-9 executed by Attorney Jeffrey R. Mazer, d/b/a Mazer Law Group LLC," Plaintiff shall receive the sum of less all applicable taxes, withholdings and deductions, to be paid as follows: (i) a check in the amount of ████████ less applicable taxes, withholdings and deductions, made payable to "Mazer Law Group LLC" and "Deborah Politis" as attorney's fees; and (ii) a check in the amount of ████████, made payable to the plaintiff "Deborah Politis." Plaintiff and Attorney Mazer shall provide the herein referenced IRS Form W-9's and GlaxoSmithKline LLC will issue IRS Form 1099's to Plaintiff and Attorney Mazer for the payments described at 2(ii). Plaintiff agrees that the allocation of payments as described in this Paragraph is solely Plaintiff's decision and Plaintiff is responsible for all taxes related to such payments. Plaintiff further agrees to

indemnify and hold harmless Defendant from and against any and all taxes, interest and penalties which may be due to any taxing authority as a result of these allocations.

3.     Plaintiff acknowledges that: (i) the payments provided pursuant to this Agreement are in full discharge of any and all liabilities and obligation of the Defendant to Plaintiff, monetarily or with respect to employee benefits or otherwise, including but not limited to any and all obligations arising under any written or oral employment agreement, policy, plan or procedure of the Defendant and/or any understanding or arrangement between Plaintiff and Defendant; and (ii) that absent his execution of this Agreement, and non-revocation of same, he would not be entitled to the payments provided pursuant to Paragraph 2 of this Agreement and that this bargained for exchange constitutes adequate and sufficient consideration for the Agreement, including, but not limited the dismissal with prejudice of the Lawsuit and the global release of claims setforth in Paragraph 4 of this Agreement.

4.     In exchange for the payments set forth above, the receipt and sufficiency of which are hereby acknowledged, Plaintiff after consultation with her attorney, Jeffrey R. Mazer, Esquire, on behalf of herself, her family, personal representatives, agents, successors, assignees, attorneys, heirs, executors and administrators (collectively referred to as "Releasors"), hereby forever fully releases, waives, gives up, acquits, satisfies and discharges with prejudice Defendant, its predecessors, successors and assigns, its current and former direct and indirect parents, affiliates, subsidiaries, divisions and related business entities, all current and former officers, directors, shareholders, employees, agents, legal representatives, employee benefit plans and the trustees, fiduciaries, administrators and parties-in-interest of those plans, trustees, servants, heirs, successors, personal and/or official representatives of each and all of the above (individually and collectively, "Releasees") of and from any and all, and all manner of claims, controversies, demands, promises, grievances, proceedings, complaints, charges, liabilities, damages, allowances, bonus, stocks, stock options, costs, expenses, actions, causes and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, in law or in equity and remedies of any type (individually and collectively "Claims") that Releasors may have by reason of any matter, cause, act, or omission, including, without limitation, those arising out of or in connection with Plaintiff's employment with or separation from employment by Defendant, its predecessors, successors and assigns, its current and former direct and indirect parents, affiliates, subsidiaries, divisions and related business entities, and all current and former officers, directors, shareholders, employees, agents, trustees, servants, heirs, successors, personal and/or official representatives. This release applies to Claims that Releasors know about and those Releasors may not know about occurring at any time on or before the Effective Date of this Agreement.

a.     This includes, but is not limited to, a release of all rights and Claims against Releasees under Title V11 of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Civil Rights Acts of 1866 and 1991, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Equal Pay Act of 1963, the Family and Medical Leave Act of 1993, the Older Workers Benefit Protection Act of 1990, the Occupational Safety and Health act of 1970, the Worker Adjustment and Retraining Notification Act of 1989, the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §§ 1161 *et seq*,; the

Massachusetts law governing workplace standards, Small Necessities Leave, personnel records and the payment of wages, G.L. ch. 149 § 1 *et seq.*; the Massachusetts law prohibiting the failure to pay certain minimum wages and overtime wages, G.L. ch. 151 § 1 *et seq.*; the Massachusetts law allowing for collection of unemployment insurance benefits, G.L. ch. 151A § 1 *et seq.*; the Massachusetts law prohibiting employment discrimination, G.L. ch. 151B § 4 *et seq.*; the Massachusetts law prohibiting certain discrimination by businesses, G.L. ch. 151E *et seq.*; the Massachusetts law requiring certain health insurance access, G.L. ch. 151F, § 1 *et seq.*;, the Massachusetts law providing for Workers Compensation claims and benefits, G.L. ch. 152 § 1 *et seq.* the United States Constitution, the Constitution of the Commonwealth of Massachusetts, as well as any other federal, state, or local statute, public policy, order, regulation, ordinance or any common law including those relating to employment, employment discrimination, termination of employment, retaliation, equal opportunity or wage and hour. Plaintiff specifically understands that she is releasing any and all Claims she has or may have had based on age, race, color, sex, sexual orientation or preference, marital status, religion, national origin, citizenship, veteran status, handicap/disability, and other legally protected categories.

b.   This also includes, but is not limited to, a release of any Claims against the Releasees for breach of contract, any tortious act or other civil wrong, and all compensation and benefit Claims including, but not limited to Claims concerning salary, bonus, benefits and any awards, grants, or purchases under any equity and incentive compensation plan or program.

c.   This includes the waiver of all claims existing on or before the date Plaintiff signs this Agreement, regardless of her awareness of the claim.   Plaintiff also acknowledges and affirms that she has been fully paid any wages owed to her and that she has been afforded all required periods of family or medical leave as well as any right to reinstatement upon conclusion of any leave taken.

d.   Notwithstanding the release and waivers set forth in this Paragraph 4, Plaintiff acknowledges that this Agreement in no way waives or limits her right to challenge the validity of this Agreement as to his waiver of claims under the ADEA in a legal proceeding under the Older Workers Benefit Protection Act, 29 U.S.C. 626 Section (f).   This Paragraph, however, is not intended to and will not limit the right of a court to decide, in its discretion, that Defendant and the Releasees are entitled to repayment or a setoff of any payments made to Plaintiff should this Agreement be found to be invalid as to the release of claims under the ADEA.   In such event, this Agreement and Release will remain in full force and effect as to all claims other than his claims under the ADEA.   This Paragraph also does not affect Defendant's and the Releasees' rights to recover costs, including attorney's fees, if allowed under federal or state law.

5.   Plaintiff represents and affirms that she has not assigned or transferred any rights, interests or Claims to which she may be entitled under the afore-mentioned Lawsuit.

6.     Plaintiff represents that, aside from the afore-mentioned Lawsuit, she has not filed, directly or indirectly, or caused to be filed, any Claims released herein against Defendant or the Releasees in any forum, including federal, state, or local court or in arbitration, any administrative proceeding with any federal, state, or local administrative agency.  Plaintiff further acknowledges that she is not waiving any right she may have to file a charge of discrimination with an administrative agency or take part in any agency investigation; however, Plaintiff acknowledges and agrees that should any Claims be pursued on his behalf, Plaintiff waives her right to any monetary or other recovery of any kind.

7.     Plaintiff shall be solely responsible for any and all taxes, withholding or deductions due and owing on the payments set forth in Paragraph 2 of this Agreement.

8.     Plaintiff agrees that any and all Medicare, Social Security, hospital, medical insurance coverage subrogation claims and/or any and all other type of liens or interest that is and/or could be claimed by any person and/or entity, will be fully paid, satisfied and released from the settlement proceeds paid herein, unless and until such time as said liens and/or claims have been fully paid, satisfied or released.  In this regard, Plaintiff agrees to indemnify and hold harmless Defendant and the Releasees, their attorneys and all others in privity with them, from any claim by, through and/or under Plaintiff including, but not limited to, any direct claim by Medicare and/or Social Security for reimbursement of any funds paid by them relating to the injuries and claims arising from the Litigation in question.

9.     Except as provided above, Plaintiff shall be responsible for and pay all of her attorney's fees, expenses and costs. Defendant shall not be responsible for Plaintiff's attorney's fees, expenses, or any other outstanding and open costs associated with this Lawsuit.

10.    Plaintiff acknowledges and agrees that she shall not seek or accept employment with Defendant or any of its affiliate companies at any time in the future.

a.     Plaintiff also acknowledges and agrees that she is not permitted to provide services to Defendant or any of its affiliate companies as an independent contractor or in any other capacity in the future.

11.    Plaintiff and her attorney shall execute and deliver to Defendant's Counsel concurrently with the execution of this Agreement, the signed "Stipulation of Dismissal With Prejudice" which has been forwarded separately by Defendant's counsel.

12.    Plaintiff agrees that all proprietary or confidential information or trade secrets concerning Defendant or its businesses, products, services, or employees, including, but not limited to, information concerning business strategies or plan, systems, products and services and their development, technical information, marketing; trading, investment, fund management and sales activities and procedures, promotion and pricing techniques, cost, credit and financial data, and customer, client, vendor, and employee information ("Proprietary Information") is the exclusive property of Defendant, and Plaintiff has returned all such Proprietary Information to Defendant. Plaintiff acknowledges and agrees that she has an ongoing obligation not to disclose or use, either directly or indirectly, any such information for any reason unless required by a statute, by a court of law, by any government, regulatory, or self-regulatory agency having

supervisory authority over the business of Defendant with jurisdiction to order Plaintiff to divulge, disclose or make accessible such information. Except as to an inquiry by any government, regulatory, or self-regulatory agency, prior to disclosure, Plaintiff shall give notice to Defendant of any such request or demand for Proprietary Information immediately upon Plaintiff's receipt of same and shall reasonably cooperate with Defendant in any application Defendant may make seeking a protective order or barring disclosure of such Proprietary Information. Notice shall be given to Mark E. Richardson, III, Vice President and Assistant General Counsel (or his successor or designee), P.O. Box 13398, Research Triangle Park, North Carolina, 27709.

13.     The settling parties agree that this Agreement and all of the terms and conditions contained herein are, and shall remain strictly confidential as among the parties:

a.     Plaintiff agrees to keep the existence, terms and negotiations leading to this Agreement strictly confidential and not disclose them in any manner whatsoever, whether orally or in writing, whether directly or indirectly, to any person or entity except as expressly permitted herein. Plaintiff represents that neither she nor anyone acting on her behalf has previously done so.

b.     Plaintiff may disclose the terms of this settlement to her spouse, attorney, accountant, and tax preparer provided that such persons agree to be bound by the terms of this Agreement to the same extent as if they were an actual signatory thereto. In the event that Plaintiff's spouse, attorney, accountant or tax preparer engages in conduct that would breach this Paragraph, such conduct shall constitute a breach of this Paragraph just as if Plaintiff has engaged in such conduct.

c.     This Agreement may be disclosed in accordance with the terms of, and upon issuance of, a final, non-appealable order of a court of competent jurisdiction to do so: Each settling party expressly obligates itself, upon notification that disclosure of this Agreement is being sought in any judicial or administrative proceeding, to notify promptly the other settling party of the same (written notification delivered to each party's legal counsel for purposes of this settlement shall be deemed adequate notification under this provision), so that each settling party will timely have the opportunity to raise any objections.

d.     This Agreement may be disclosed in a legal action filed by either settling party for the purpose of enforcing such Agreement.

e.     Defendant may disclose this Agreement to its officers, directors, employees or agents, who possess a business-related need to know the contents of this Agreement, or to its accountants, tax preparers, legal counsel, or to any appropriate governmental authority.

14.     Plaintiff expressly agrees not to disparage Defendant, its officials, representatives, or employees, orally or in writing.

15.     Defendant, unless otherwise compelled by court order or other legal process, agrees to provide a neutral reference which shall only confirm job title, salary information and dates of employment.  All reference checks and inquiries verifying employment must be directed to www.theworknumber.com, 1-800-367-5690; GSK ID - 12174.

16.     Plaintiff agrees to cooperate with Defendant and its attorneys concerning any past, present, or future legal matters that relate to or arise out of his employment with Defendant.

17.     The invalidity or unenforceability of any provision of this Agreement shall have no effect upon, and shall not impair the validity or enforceability of any other provision of this Agreement; or affect this Agreement in any other jurisdiction. The settling parties agree that if any provision herein is found to be invalid or unenforceable by a court of competent jurisdiction, Plaintiff and Defendant will request that the court revise the provision to come closest to the meaning intended and the provision will be enforced as rewritten without affecting any other provision of this Agreement.

18.     The parties understand that this Agreement constitutes the complete understanding between the parties, and supersedes any and all agreements, understandings and discussions, whether oral or written, between the Plaintiff and the Defendant and/or any Releasee.  No amendment, modification or waiver of any of the terms of this Agreement shall be valid unless made in writing, and signed by the settling parties and attaches an original executed copy of this Agreement.

19.     Plaintiff agrees that in the event of any breach by Plaintiff or her agents or representatives of any part of this Agreement, Defendant may seek to recover any amounts paid to Plaintiff herein, and seek any other available remedies including attorney's fees and costs incurred to enforce any provisions of this Agreement. Plaintiff further acknowledges and agrees that Defendant's remedies at law for a breach or threatened breach of any of the provisions of Paragraphs 4, 5, 6, 11 12, 13, 14 and 16 of this Agreement would be inadequate. In recognition of this fact, Plaintiff agrees that in the event of a breach or threatened breach of those provisions, in addition to any remedies at law, Defendant without posting any bond, shall be entitled to obtain equitable relief in the form of specific performance, temporary restraining order, temporary or permanent injunction, or any other equitable remedy which may then be available.

20.     All settling parties have been represented by legal counsel and jointly participated in the drafting, negotiation and finalization of this Agreement. In recognition of this fact, the settling parties agree that this Agreement shall not be construed against either party.

21.     This Agreement is not intended, and shall not be construed, as an admission that either Plaintiff, Defendant or any of the Releasees have violated federal, state or local law (statutory or decisional), ordinance or regulation, breached any contract or committed any wrong whatsoever.

22.     The settling parties hereby represent that they fully understand each term of this Confidential General Release and Settlement Agreement and that they agree to be bound thereby and that they are signing this Agreement knowingly and voluntarily, without coercion or duress.

23.     This Agreement shall not be assignable by Plaintiff but it shall be binding upon Plaintiff's heirs, executors, administrators, agents and legal representatives.  This Agreement shall be freely assignable by Defendant without restriction and without need for Plaintiff's consent, and shall be deemed automatically assigned by Defendant with Plaintiff's consent in the event of any sale, merger, share exchange, consolidation or other business reorganization.  This Agreement shall be binding upon, and shall inure to the benefit of the Defendant's successors and assigns.

24.     This Confidential General Release and Settlement Agreement shall be interpreted and enforced in accordance with the laws of the Commonwealth of Massachusetts, without reference to its conflict of laws provisions, and applicable federal law.

25.     Plaintiff acknowledges that: (a) she has read and understands each of the provisions of this Agreement; (b) she is hereby advised to consult with an attorney prior to executing this Agreement; (c) she has twenty-one days from her receipt of this Agreement to review it and to consider her decision to sign it, although she may return it to counsel for Defendant prior to that time if she desires; (d) any material or immaterial changes to this Agreement will not restart the running of the twenty-one day review period; (e) she fully understands the significance of all of the terms and conditions of this Agreement and has discussed them with her attorney, or has had a reasonable opportunity to do so; (f) she has had answered to her satisfaction any questions she has asked with regard to the meaning and significance of any of the provisions of this Agreement; (g) she is entering into this Agreement of her own free will; and (h) she understands that this Agreement is not intended to be a waiver of Claims arising after the Effective Date of this Agreement.

26.     Once Plaintiff signs this Agreement, she has seven (7) days to revoke it. Plaintiff may do so by delivering to counsel for Defendant written notice of her revocation within the seven-day revocation period. This Confidential General Release and Settlement Agreement will become effective on the eighth day after Plaintiff signs it ("Effective Date"), provided that she has not revoked it during the seven-day revocation period.

27.     In the event Plaintiff does not accept this Agreement as set forth above, or in the event Plaintiff revokes this Agreement during the seven-day revocation period, this Agreement, including but not limited to the obligation of Defendant to provide payments as discussed above, shall be deemed null and void.

**[THIS PAGE CONTAINS NO FURTHER MATERIAL]**

**IN WITNESS WHEREOF,** Plaintiff, Deborah Politis, has appeared to set her hand and seal with the intention that this be a sealed instrument, this _____ day of July, 2012.

**BY SIGNING THIS AGREEMENT YOU GIVE UP AND WAIVE LEGAL RIGHTS.**

**I HAVE READ THIS CONFIDENTIAL GENERAL RELEASE AND SETTLEMENT AGREEMENT AND UNDERSTAND ALL OF ITS TERMS. I SIGN AND ENTER THIS AGREEMENT KNOWINGLY AND VOLUNTARILY WITH FULL KNOWLEDGE OF ITS MEANING.**

_____          _____
**DEBORAH POLITIS**                            **DATE**


_____          _____
**WITNESS**                                          **DATE**


_____          _____
 **GLAXOSMITHKLINE LLC**                   **DATE**
**By:** _____
**Title:** _____

**Edmund C. Neuhaus, PhD, ABPP**
*Board Certified Clinical Psychologist*

Assistant Clinical Professor of Psychology          275 Grove Street, 2-400
Harvard Medical School                              Auburndale, MA 02466

Clinical Associate /Senior Teaching Faculty         617-543-2236
McLean Hospital                                     eneuhaus@atheneumlearning.com

1/2/13

Jeffrey Mazer, Esq.

Dear Attorney Mazer:

I am writing regarding Ms. Deborah Fishman Politis who is under my care for treatment of emotional stress, anxiety, and life management skills. This letter is specifically regarding events prior to and after the June 19, 2012 mediation session with GSK.

Prior to the mediation, Ms. Politis and I discussed strategies for her to stay calm and maintain her composure during the mediation session. She voiced explicit concerns about having to make any decisions during the actual mediation session because she did not believe she could make an adequately informed decision on the spot. As such, she indicated that she was assured that there would be no binding agreement made at the time of the session; rather her expectation was that the issues would be reviewed and then a final decision would be made later. She had been considering having a family member or close friend attend the session, but decided against this given that her expectation was there would be no binding decision required of her.

After the mediation session on June 19, I saw her on June 20, 22, 28, and several more times in July and August. Immediately after the mediation session, she was distraught, upset, and incredibly stressed about the mediation session. She indicated that at the end of the 14 hour session she was asked to sign a term sheet and was horrified subsequently to learn that it was binding. Ms. Politis presented with extreme anxiety, ruminative thinking that she signed a term sheet she did not fully understand or accept, and extreme hopelessness that she made the wrong decision. It was difficult for me to ascertain the details of the situation as she was so distraught and could not clearly articulate the issues involved in the term sheet that she had signed. In weeks following the mediation session, she continued to be incredulous that she signed a term sheet and was perpetually panicked that she was locked into an agreement she did not fully understand.

Sincerely,

Edmund C. Neuhaus, Ph.D., ABPP

Charles R. Lindley, M.D.                    Brigham & Women's Hospital
1075 Washington Street
West Newton, Mass. 02465                    Harvard Medical School


Telephone: (617) 969–9702

January 11, 2013

To Whom It May Concern:

I am writing at the request of Ms. Deborah Politis regarding her mental status related to a
mediation session held on June 19, 2012. In describing the emotional impact of this experience I
will draw on my notes from psychotherapy sessions following this event. These notes reflect –
often verbatim – her actual emotional status at the time rather than what might be recalled in
retrospect.

On July 2, 2012 I noted that Ms. Politis was, " very upset by mediation experience – fears she's
been taken advantage of by being maneuvered into signing a binding agreement."

On July 11 she said that she'd been having, " A really challenging time with my emotions since
issues around the mediation." "I've been having constant panic attacks since this happened."

On Jul 18 she reported, "I'm struggling very, very much."…"I feel like I can't handle anything."

On July 25 – "It's so painful – my heart is beating – I feel out of breath" re mediation experience.

On August 1 she described ,"Chronic fear for 1 ½ months – panic – can't cook, can't eat … I just
panic about the situation I'm in." "Extremely high levels of chronic anxiety since mediation"

It is quite clear that in the course of an intense, fourteen-hour-long legal conference Ms. Politis
reached a point at which she had become "totally fried." It is reasonable to suppose that this
grueling experience would render her excessively compliant – especially given her history of
chronic childhood trauma which was characterized by being bullied into complete compliance.

Sincerely,

Charles R. Lindley, M.D.